IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

FILED

3:05 pm, 2/13/15

Tim J. Ellis
Clerk of Court

| | |
|---|---|
| In re | ) |
| | ) |
| SHAWN N. CUNNINGHAM | ) Case No. 13-20832 |
| NANETTE A. CUNNINGHAM | ) Chapter 7 |
| | ) |
| Debtors. | ) |
| | ) |
| PATRICK S. LAYNG, United | ) |
| States Trustee for Region 19 | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adv. No. 14-2008 |
| | ) |
| SHAWN N. CUNNINGHAM | ) |
| NANETTE A. CUNNINGHAM | ) |
| | ) |
| Defendants. | ) |

## OPINION

On February 4, 2015, the Complaint for Revocation of the Debtors' Discharge Pursuant to 11 U.S.C. § 727(d)(1) filed by Richard A. Wieland, United States Trustee for Region 19 ("UST") and the Amended Answer filed by Shawn Cunningham and Nanette Cunningham ("Debtors") came before the court for an evidentiary hearing. At the conclusion of the hearing, the court took the matter under advisement. Having reviewed the record, testimony, and evidence the court is prepared to rule.

Debtors filed for chapter 7 bankruptcy protection on August 28, 2013. They received their discharge, pursuant to 11 U.S.C. § 727(a) on December 3, 2013. The UST

seeks a determination that cause exists to revoke Debtors' discharge under § 727(d)(1) and (e).[1]

## Jurisdiction

The court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334(a).

## Findings of Fact

The parties stipulated to the uncontroverted facts as listed in the Final Pretrial Order.[2] Each debtor previously filed a chapter 7 bankruptcy. Debtors retained Felix Sowada ("Sowada") to file this chapter 7 bankruptcy case, paying him $1,300.00. Mr. Sowada requested Debtors provide a list of creditors that brought lawsuits against Debtors in order to prepare the bankruptcy petition and schedules. Ms. Cunningham provided a computer generated list of lawsuits to Mr. Sowada, as given to her by the Circuit Court of Campbell County. The list did not contain lawsuits from the District Court.

After Debtors' bankruptcy case was filed, Randy Royal ("Trustee") was appointed as the chapter 7 trustee to administer the case. Debtors appeared and testified, under oath, at the §341 meeting of creditors on October 2, 2013. Debtors' discharges were entered on December 3, 2013 as no complaints were filed controverting their eligibility for a

---

[1] Unless otherwise noted, all statutory references are to Title 11 of the United States Code.

[2] Final Pretrial Order, Dkt. No. 27, filed on January 29, 2015, page 3, Section 4, ¶ Nos. 1-36.

discharge under § 727(a).

Prior to filing for chapter 7 bankruptcy protection, Debtors were Plaintiffs in a civil action in Campbell County District Court, Sixth Judicial District, State of Wyoming, against Defendant, Western Fuels - Wyoming, Inc. ("Western Fuels"). Debtors and Western Fuels entered into a Settlement Agreement on March 22, 2013. The Settlement Agreement contained a Confidentiality provision, which stated:

> Plaintiffs agree that they will forever keep **strictly confidential** the substance of negotiations and conditions of the settlement, and the terms of this Agreement, except for communications with the Internal Revenue Service; accountants or other tax advisers; immediate family members; or as may be required by law. Plaintiffs agree that they will advise such persons to who they disclose this confidential information that they must keep the substance of the negotiations and the conditions of the settlement strictly confidential and shall not disclose the information to any third party in any form. This provision prohibits the release or publication of any information about the terms of this Agreement by Plaintiffs or by any party to which they may disclose the terms of this Agreement, all allowed under this Agreement. Plaintiffs may respond to inquiries relating to the Lawsuit by stating, "It has been resolved."

Debtors agreed to release all claims against Western Fuels for the total sum of $230,000.00. After attorneys' fees and tax withholdings were deducted from the settlement proceeds, Debtors received a check in the amount of $60,226.24 dated March 25, 2013. Debtors cashed the settlement check by April 7, 2013. Debtors testified that the reason the settlement check was cashed and not deposited into a bank account was so Donald Lundvall and other creditors could not get it to satisfy debts. Debtors did not disclose the lawsuit, Settlement Agreement or settlement proceeds to Sowada, the Trustee

or the UST until after their discharge was entered on December, 3, 2013.

Debtors testified that between the time they cashed the settlement check in April, 2013 and filed their bankruptcy petition on August 28, 2013, they spent the entire amount of settlement proceeds. Debtors provided an "Itemized List..." to the UST detailing how they spent the proceeds. The list, included the following expenditures:

- Down payment of 2006 Dodge Ram, $7,000.00;
- Taxes & Plates on 06 Dodge, $1,300.00;
- Taxes & Plates on Honda CRV, $1,500.00;
- Tires on 06 Dodge, $1,300.00;
- Rocker Panels of 06 Dodge, $500.00;
- Tonneua Cover on 06 Dodge, $600.00;
- Carpet for house $2,000.00;
- Flooring for Kitchen & Dining Room, $2,000.00;
- Other minor repairs on house, $1,000.00;
- Washer & Dryer, $2,000.00;
- Paid off Couch, $600.00;
- King bed, dresser, 2 end tables, $1,200.00;
- Dining Room Table, $500.00;
- Pressure Washer, $500.00;
- Air tools, drills and other tools, $2,500.00;
- Kids school clothes, $4,000.00;
- Gave each kid $500 to spend for themselves, $2,000.00;
- Each Debtor bought $500 clothes and shoes, $1,000.00;
- Eating out several times in 4 months, $2,000.00;
- Trips to Thermopolis, Rapid City, Billings, est: $3,000.00;
- Caught up on bills (Cell, city, cable, gas), $2,500.00;
- Bought a full beef, $2,500.00;
- Several soccer and baseball trips, $3,000.00;
- Kids sports fees, shoes, wrestling stuff, baseball stuff, school lunch money, $3,500.00;
- First Interstate Bank overdraft, $300.00;
- Groceries for four months, $5,000.00;
- Felix Sowada for Bankruptcy, $1,300.00;
- Camping trips, tent and air mattresses, $2,500.00;
- Movie, theater, bowling, things for house, flowers for yard, garden, $2,000.00;

- Fuel, $1,500.00;
- Flat screen tv for daycare room, $500.00;
- Craft supplies for daycare, $300.00;
- Air conditioner repaired in house, $650.00.

The court's review of Debtors' Schedule F reflects that Debtors listed unsecured nonpriority claims in the amount of $200,463.00 upon filing their bankruptcy petition.

**Discussion**

The UST asserts that Debtors' discharge should be revoked under § 727 (d)(1) and (e), which states,

> "(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if -
> (1)   such discharge was obtained through the fraud of the debtor and the requesting party did not know of such fraud until after the granting of the discharge..."

and,

> "(e) The trustee, a creditor, or the United States trustee may request a revocation of a discharge -
> (1)   under subsection (d)(1) of this section within one year after such discharge is granted..."

Revocation of a debtor's discharge is an extraordinary remedy and § 727(d) must be construed strictly against a party seeking revocation and liberally in the debtor's favor.[3] To prevail on a claim under § 727(d)(1), the movant must prove by a preponderance of the evidence that: (1) the discharge was obtained through fraud; (2) the movant did not discover the fraud until after the discharge was granted; and (3) the fraud,

---

[3] *Boydstun v. Galey (In re Boydstun)*, No. 7-11-12456 TR, Adv. No. 12-1193T, Adv. No. 12-1298T, 2013 Bankr. LEXIS 3821 (Bankr. D.N.M. Jan. 18, 2013).

if known, would have prevented the discharged under § 727(a).[4] A bankruptcy debtor's fraudulent intent in a transfer or concealment of property may be established by circumstantial evidence, or by inferences drawn from a course of conduct. Fraudulent intent can also be demonstrated by showing that the bankruptcy debtor acted with reckless disregard, or the state of mind present when the debtor does not care about the truth or falsity of a statement, which is equivalent of knowing that the representation is false and material. An honest mistake or oversight is not sufficient to deny the debtor a discharge. The bankruptcy court is required to evaluate whether the debtors' pre-petition debt is of such a magnitude that denial of a discharge would make life virtually impossible for them and to balance that against the degree of heinousness evidenced by the circumstances of the violation of the bankruptcy laws constituting the grounds for denial of discharge. The Bankruptcy Code does not dole out this substantial benefit [a discharge] indiscriminately. Rather, the opportunity for a completely unencumbered new beginning is reserved only for the honest but unfortunate debtor. Also, at the core of bankruptcy law is the policy of obtaining a maximum and equitable distribution for creditors.

The court, analyzes the following elements in considering the case before it:

(1) <u>Was Debtors' discharge obtained through fraud?</u>

Evidence of fraudulent intent can be demonstrated by the debtor's admission that

---

[4] *Boydstun* citing *Lawrence Natl Bank (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991).

he or she made the transfer to protect his or her assets from attachment.[5] Debtors testified the reason they did not deposit the settlement proceeds into a bank account was to forestall creditors, especially an ex-step-father from proceeding to collect on his judgment. Mrs. Cunningham testified that after receiving the settlement proceeds the Debtors considered paying creditors, but determined not to, as "other creditors would get a judgment and execute." The court finds that the Debtors admit that they protected the settlement proceeds from creditors by cashing the settlement check and keeping the cash in a cash box at their house, rather than deposit the funds into a bank account. Debtors' actions demonstrate evidence of their fraudulent intent to protect the settlement proceeds from creditors' attachment. The UST met the requirements of this element.

(2) <u>The movant did not discover the fraud until after the discharge was granted</u>.

The parties stipulated that the UST did not discover the Debtors' Settlement Agreement and receipt of the settlement proceeds until after Debtors' discharge was entered on December 3, 2013. This element has been satisfied.

(3) <u>Would have the fraud, if known, prevented Debtors' discharge under § 727(a)?</u>

The Bankruptcy Code provides that the court, "shall grant the debtor a discharge, unless the debtor, with intent to hinder, delay...a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed....(A) property of the debtor, within one year before the date of

---

[5] *Aweida v. Cooper (In re Cooper)*, 150 B.R. 462, (D. Colo. 1993).

the filing of the petition.[6] It is uncontroverted that in the five month period, prior to filing their chapter 7 bankruptcy petition, Debtors (1) cashed the settlement check in the amount of $60,226.24; (2) intentionally did not deposit the funds in a bank account so their creditors could not garnish or attach it to satisfy judgments; (3) spent the proceeds on improvements to their house, purchased a replacement vehicle for Mr. Cunningham; vacations, and various household items. Debtors testified that since the circumstances of their lives did not allow them or their children to have "extras", and upon receiving the settlement proceeds they decided to spend the funds on themselves, rather that pay creditors. The court finds Debtors' behavior to reflect a blatant intent to hinder and delay payment of their creditors.

The UST additionally argues Debtors' discharge would not have been entered under § 727(a)(4)(A), which provides: (a) the court shall grant the debtor a discharge, unless - (4) the debtor knowingly and fraudulently, in or in connection with the case - (A) made a false oath or account. Reckless indifference to the truth...has consistently been treated as the functional equivalent of fraud for purposes of § 727(a)(4)(A).[7]

Debtors testified: they did not receive a copy of their completed bankruptcy petition and schedules from Mr. Sowada; that when they went to Mr. Sowada's office to sign the documents, the pages were printed on paper with other print on the other side;

---

[6] § 727(a)(2)(A).

[7] *Freelife International, LLC v. Butler (In re Butler)*, 377 B.R. 895, 922 (Bankr. D. Utah 2006).

and he did not review the petition, schedules and other documents with them. Contrarily, Debtors testified, under oath, at their § 341 meeting of creditors and responded to the following questions, put to them by the Trustee:

> "Mr. Royal. Okay. Did you folks give Mr. Sowada the information so that he could prepare the statements and schedules that you filed in this bankruptcy?
>
> Ms. Cunningham: Yes.
>
> Mr. Cunningham: Yes, sir.
>
> Mr. Royal: I can't hear you.
>
> Mr. Cunningham: Yes, sir.
>
> Mr. Royal: Okay. Did both of you review those documents before you signed them?
>
> Ms. Cunningham: Yes, sir
>
> Mr. Cunningham: Yes, sir.
>
> Mr. Royal: And did both of you sign them?
>
> Ms. Cunningham: Yes.
>
> Mr. Cunningham: Yes."[8]

The court finds the Debtors' testimony incredulous. They testified that their counsel did not explain the contents of their settlement agreement regarding the confidentiality provision. They testified that separate counsel did not explain or provide them documents regarding their bankruptcy petition. Then contrarily, they testified

---

[8] Trustee's Exhibit 3, Pg. 4, ¶ 4-17.

before the Trustee, that they read and understood the contents of their bankruptcy documents.

It is difficult for this court to believe that Debtors did not know that their testimony at the § 341 meeting was false, or they did not understand they had an obligation to tell the truth during the creditors' meeting, as they were sworn in at the beginning of the meeting. As the Colorado Bankruptcy Court found in *Disgesualdo*,[9] the functioning of the bankruptcy depends upon the honesty of debtors at all stages of the bankruptcy process. Debtors' false statements under oath constitute a basis for denial of discharge under § 727(a)(4)(A). Debtors cannot have it both ways. They cannot assert they were not provided guidance from counsel in one breath, and deny the same in another. The court finds that their false testimony at the § 341 meeting, at minimum, showed a reckless disregard for the truth and is a basis that their discharge would have been denied. The court finds the UST satisfied this element.

In conclusion, the court finds that the UST met the elements under § 727 (d)(1) to revoke Debtors' discharges.

Debtors argue that the court must consider whether their prepetition debt is of such magnitude that denial, or in this case, revocation, of their discharge would make life virtually impossible for them and to balance that against the degree of heinousness evidence by the circumstances of the violation of the bankruptcy laws constituting the

---

[9] *Digesualdo* at 523.

ground for revocation of the discharge.[10] Debtors list unsecured non-priority debt in the amount of $200,463.00. Ms. Cunningham operates a day-care from her home earning $2,000.00 income per month.[11] Mr. Cunningham has been injured in three separate incidents and receives Worker's Compensation in the amount of $2,620.00 each month. The Debtors have four teenage dependents. Mr. Cunningham has a high school education. Ms. Cunningham attained her GED. Debtors rely upon *Digesualdo* arguing that in the event the court finds that their discharge should be revoked, the court takes into consideration their circumstances and allow them to retain the discharge.

In *Digesualdo*, Debtors owned and were employed by the business. They operated the business for nearly 22 years. Mr. Digesualdo was 66 years old with a high-school and trade school education. Mrs. Digesualdo also worked part-time at the family business. She also was the primary homemaker, worked at the elementary and high schools, had run a restaurant and delivered newspapers. The DiGesualdos sold the business and paid a substantial amount of funds to family members from funds deposited into their personal account to repay loans, purchased a vehicle, pre-paid monthly mortgage payments, retained cash to pay taxes, and paid business creditors. The Digesualdos appear to have attempted to pay off as many creditors as possible, before considering bankruptcy.

In the case before this court, Debtors specifically decided not to pay their creditors.

---

[10] *Digesualdo* at 524.

[11] Debtors' Schedule I.

They intentionally retained the settlement funds, determined that creditors would not gain access to the funds, did not disclose the settlement agreement or award to their bankruptcy counsel, and spent the funds making improvements on their residence, taking vacations and generally spending the money in a period of four months before talking to counsel about filing their bankruptcy. The court distinguishes the Colorado Bankruptcy Courts ruling allowing the Digesualdo their discharge. Debtors intentionally denied distribution of any of the settlement funds from their creditors. In this case, the court finds that Debtors' actions were egregious enough to warrant the revocation of their discharges.

In conclusion, the court finds that the UST has met its burden for the revocation of Debtors' discharges under §727(d)(1). This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

DATED this 13 day of February, 2015.

By the Court

HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

Service to:
 Daniel Morse, UST
 Phillip Willoughby